J. S16042/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BIANCA AURA BUCANO, | : | |
| | : | |
| Appellant | : | No. 2292 EDA 2015 |

Appeal from the PCRA Order June 29, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000778-2010

BEFORE: OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:         **FILED APRIL 11, 2016**

Appellant, Bianca Aura Bucano, appeals from the order entered in the Monroe County Court of Common Pleas denying her sixth petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.[1] After careful review, we affirm on the basis of the PCRA court's opinion.

The facts, as summarized in this Court's memorandum opinion disposing of Appellant's direct appeal, are as follows:

> The instant charges arose out of the Thirtieth Statewide Investigating Grand Jury. Following the court's acceptance of Presentment Number 18 on March 15, 2010, the Pennsylvania Attorney General filed a criminal complaint on March 29, 2010, charging Appellant[1] with a multitude of crimes related to an insurance fraud scheme allegedly masterminded by Judi Grate,

---

[1] Although Appellant has filed six total PCRA petitions, as well as two writs of *habeas corpus* seeking collateral relief, she filed the instant petition on September 26, 2014.

in which Appellant and her daughter, Melissa M. Bucano, participated. The scheme involved submission of fraudulent claims for long-term care insurance benefits to various insurance companies.

[1] Appellant and eight co-defendants were charged: Judi Grate, Melissa Bucano, who is Appellant's daughter, Christopher Bucano, who is Appellant's son, Barbara Rollins, Uhura Byrd, Patricia Lesane, Priscilla Grate Flowers, and Grace John.

***

Appellant entered a guilty plea dated September 8, 2011, and filed September 13, 2011, which she subsequently withdrew on December 13, 2011. A jury trial for Appellant and her daughter, Melissa,[2] began on April 16, 2012, and concluded on April 25, 2012, with convictions [on two counts of corrupt organizations, one count of dealing in proceeds of unlawful activity, ten counts of insurance fraud graded as a felony, one count of insurance fraud graded as a misdemeanor, two counts of theft by deception, three counts of attempt to commit theft by deception, two counts of forgery, and one count of conspiracy].

[2] A panel of this Court affirmed the judgment of sentence of Melissa Bucano, *Commonwealth v. Bucano*, 82 A.3d 468 (Pa. Super. filed June 24, 2013) (unpublished memorandum), and our Supreme Court denied her petition for allowance of appeal. *Commonwealth v. Bucano*, 79 A.3d 1096 (Pa. 2013).

The trial court sentenced Appellant on August 2, 2012, docketed August 3, 2012, to an aggregate period of incarceration of 141 months to 282 months and imposed restitution in the amount of $1,146,181.28. Appellant filed post-sentence motions on August 13, 2012, followed by *pro se* motions for PCRA relief on August 20, 28, and 30, 2012. The trial court dismissed the June 26, 2012 PCRA petition on August 31, 2012, and defense counsel sought to withdraw on September 6, 2012. At an October 17, 2012 hearing on post-sentence motions, defense counsel withdrew his withdrawal request. The trial court denied post-sentence motions on January 7, 2013, and granted an

unopposed motion to reinstate Appellant's direct appeal rights *nunc pro tunc* on February 19, 2013.

***Commonwealth v. Bucano***, No. 599 EDA 2013 (Pa. Super. filed May 20, 2014) (unpublished memorandum) (some citations and footnotes omitted).

Appellant filed a direct appeal. We affirmed Appellant's judgment of sentence on May 20, 2014. ***Id***. Appellant did not file a Petition for Allowance of Appeal.

On September 26, 2014, Appellant filed the instant timely *pro se* PCRA petition, which was amended after appointment of counsel, alleging numerous claims of ineffective assistance of trial and appellate counsel. The PCRA court held an evidentiary hearing on February 23, 2015, at which Appellant, Appellant's two trial attorneys, and Appellant's appellate counsel testified.

On June 29, 2015, the PCRA court denied Appellant's Petition. She filed a timely Notice of Appeal on July 21, 2015.

Appellant presents the following 13 issues on appeal:

1. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to adequately advise [Appellant] of potential ramifications of withdrawal of guilty plea vs. plea offers vs. trial?

2. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to advise/explain to [Appellant] regarding plea offers?

3. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to appeal the issue of recusal of judge?

4. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to appeal the sentence as it was not proper?

5. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to review PSI with [Appellant] prior to sentencing?

6. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to call necessary witnesses?

7. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to adequately prepare for trial?

8. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to adequately cross-examine witnesses?

9. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to adequately prepare client for trial?

10. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to appeal the issue of severance?

11. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to adequately cite to documents and testimony?

12. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to adequately assure certified record was complete?

13. Whether it was an error of law or an abuse of discretion when the trial court found there was no ineffective assistance of counsel for failing to adequately communicate with [Appellant] or ensure factual correctness of the brief?

Appellant's Brief at 4-6 (suggested answers and capitalization omitted).

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that her conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

All of Appellant's issues on appeal are claims of ineffective assistance of trial and appellate counsel. The law presumes counsel has rendered effective assistance. **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. **Id**. To satisfy this burden, Appellant must plead and prove by a

preponderance of the evidence that: (1) her underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate her interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different. ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003).

The Honorable Jonathan Mark, sitting as the PCRA court, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's claims on appeal. After a careful review of the parties' arguments and the record, we affirm on the basis of the PCRA court's opinion. ***See*** PCRA Court Opinion, dated 10/5/15, at 13-36 (concluding that each of Appellant's ineffectiveness claims failed).

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2016

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA :
:
v. : NO. 778 CR 2010
:
BIANCA AURA BUCANO, : APPEAL DOCKET
: NO. 2292 EDA 2015
Defendant :
:

<u>OPINION IN SUPPORT OF ORDER PURSUANT TO Pa. R.A.P. 1925(a)</u>

Petitioner, Bianca Aura Bucano, files this appeal from the order dated June 29, 2015, that denied her amended petition for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. Section 9541 *et. seq.* After the appeal was filed, we issued an order directing Petitioner to file a statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). We now issue this opinion in accordance with Pa. R.A.P. 1925(a).[1]

**BACKGROUND**

The factual and procedural history of this case, up through the filing of Petitioner's direct appeal, is detailed in several opinions previously filed in this case, including: 1) the memorandum opinion issued by the Superior Court on May 20, 2014, at No. 599 EDA 2013, that affirmed Petitioner's judgment of sentence; 2) the pre-trial opinion and order issued by the Honorable Jennifer Harlacher on September 7, 2011 that denied Petitioner's omnibus pre-trial motion; and 3) the Rule 1925(a) opinion

---

[1] In our order denying the PCRA petition, we indicated that an opinion explaining the reasons for denial would follow. As the opinion was being finalized, Petitioner filed this appeal. Accordingly, we held off issuing an opinion until we received Petitioner's Rule 1925(b) statement. This opinion articulates the reasons for denial and addresses Petitioner's assignments of error.



1

**EXHIBIT**
**C**

issued by Judge Sibum in response to Petitioner's direct appeal. We incorporate all three of the referenced opinions (collectively the "Prior Opinions") into this opinion by reference.

In addition to the Prior Opinions that were issued in this case, the opinion issued by the undersigned on June 29, 2015, at Docket No. 781 Criminal 2010, that denied a PCRA petition filed by Petitioner's daughter and co-defendant, Melissa Bucano, provides relevant history and effectively addresses several of the issues raised by Petitioner in this appeal.[2] A copy of that opinion (the "Melissa Bucano PCRA Opinon") is attached and incorporated as Appendix 1.

In summary and supplementation sufficient to address Petitioner's claims and read this decision in context, we offer the following:

Following an Attorney General investigation into insurance fraud, the 30th Statewide Investigating Grand jury issued a presentment recommending that Petitioner and eight others, including her son and daughter, be criminally charged. As a result, Petitioner was arrested and charged with multiple felony and misdemeanor offenses including Corrupt Organizations, dealing in Proceeds of Unlawful Activities, Insurance Fraud, Theft, Forgery, Conspiracy, and Attempt.

Initially, Petitioner waived her preliminary hearing to pursue pleas negotiations, but reserved the right to request remand. Negotiations stalled and the case was remanded. At the preliminary hearing, one count of Theft by Failure to Make Required Disposition of funds was withdrawn. The remaining charges were bound over.

---

[2] Like her mother, Melissa Bucano has appealed our order that denied her PCRA petition. Her appeal is docketed to No. 2278 EDA 2015.

2

During the early plea negotiations and at the preliminary hearing, Petitioner was represented by Ernest D. Preate, Jr. Esq., the first of six attorneys, including present PCRA counsel, who would represent her in this case. After the case was bound to court, Attorney Preate sought leave to withdraw citing, among other reasons, "irreconcilable" differences with Petitioner.

On May 19, 2011, the Commonwealth filed an information charging Petitioner with the following thirty-one offenses: two counts of Corrupt Organizations (F-1), Dealing in Proceeds of Unlawful Activities (F-1), Criminal Conspiracy (F-1), twelve felony counts of Insurance Fraud (F-3), four counts of Theft by Deception (F-3), three counts of Attempt to Commit Theft by Deception (F-3), and eight counts of forgery (M-1).

Subsequently, through her third attorney, Petitioner filed an omnibus pre-trial motion. The motion was denied by opinion and order dated September 7, 2011.

On September 8, 2011, Petitioner pled guilty to an amended charge of Insurance Fraud and five amended counts of Conspiracy to commit various forms of Theft, all of which were graded a felonies of the third degree. Petitioner was represented during the plea by Jeffrey G. Velander, Esq., the first of her attorneys whom she alleges was ineffective.

Thereafter, Attorney Velander filed petitions seeking leave to withdraw citing, among other things, "irreconcilable" conflicts with Petitioner. The differences between attorney and client centered on Attorney Velander's belief that the plea Petitioner had entered was in her best interests and Petitioner's insistence that the plea be withdrawn.

3

On November 10, 2011, Attorney Velander, at Petitioner's demand, filed a motion seeking leave for Petitioner to withdraw her plea. Despite still being represented by Attorney Velander and the filing of the counseled motion, Petitioner filed a *pro se* motion to withdraw her guilty plea. That motion was forwarded to Attorney Velander.

On December 14, 2011, following a hearing, Petitioner's request for permission to withdraw her guilty plea was granted, Attorney Velander's motion for leave to withdraw from representation was granted, the case was placed on a trial list, and Petitioner's bail was modified to $100,000 straight. Petitioner was incarcerated in lieu of bail.

On December 28, 2011, William A. Watkins, Esq., the second of her attorneys whom Petitioner claims was ineffective, was appointed to represent Petitioner. Attorney Watkins represented Petitioner from that point up through the filing of her direct appeal.

Trial began with jury selection on April 4, 2012. Testimony began on April 16, 2012. On April 25, 2012, the jury convicted Petitioner of: two counts of Corrupt Organizations, Dealing in Proceeds of Unlawful Activities, Criminal Conspiracy, eleven counts of Insurance Fraud, two counts of Theft by Deception, three counts of Attempt to Commit Theft by Deception, and two counts of Forgery. Petitioner was found not guilty of two counts of Theft by Deception, two counts of Forgery, and one count of Insurance Fraud. The remaining charges were withdrawn or dismissed.

On May 7, 2012, Petitioner filed Post-Verdict Motions. Later, she filed a Motion for Bail Modification. At the hearing on both motions, Petitioner's counsel made an

4

oral motion to withdraw Petitioner's Post-Verdict Motions. By Order dated June 20, 2012, Petitioner's Post-Verdict Motions were dismissed without prejudice to the right of Petitioner to re-file as a Post-Sentence Motion or a Motion for Extraordinary Relief at the time of sentencing. Also by Order dated June 20, 2012, Petitioner's Motion for Bail Modification was denied.

On or about June 26, 2012, Petitioner filed a *pro* se Petition for *Habeas Corpus* Relief and a PCRA Petition. By Order dated July 2, 2012, the Court issued an Order directing the Clerk of Courts to forward Petitioner's *pro* se Petition to counsel of record, Attorney Watkins. On July 13, 2012, the Court issued a Notice of Intent to Dismiss Petitioner's PCRA Petition and Order due to the premature nature of the Petition. On August 2, 2012, Petitioner filed a *pro se* Writ of Habeas Corpus, and again, this Court directed the Clerk of Courts to forward the motion to Petitioner's counsel of record.

On August 7, 2012, Petitioner was sentenced to an aggregate term of incarceration of not less than 141 months nor more than 282 months to be served in a State Correctional Institution. Additionally, Petitioner was ordered to: (1) pay restitution to the Pennsylvania Commission on Crime and Delinquency Victim's Compensation Program in the amount of $35,000.00; (2) pay restitution to Philadelphia American Life Insurance Company in the amount of $418,496.28; (3) pay restitution to Genworth Life Insurance Company in the amount of $371,083.00; (4) pay restitution to MetLife in the amount of $321,602.00; (5) pay the costs of the criminal proceedings, (6) have a DNA sample and fingerprints taken pursuant to Act 185 of 2004 and pay the $250.00 fee associated with this requirement; and (7) reimburse the Commonwealth of Pennsylvania the sum of $2,551.83 for actual witness fees incurred

5

in bringing this matter to trial. Petitioner was deemed eligible for the Recidivism Risk Reduction Incentive (RRRI) Program, with an alternative minimum sentence calculated to be 117 months, 15 days. Defendant was given a time credit commencing December 13, 2011.

On August 13, 2012, Petitioner, through counsel, filed Post-Sentence Motions, in which she argued the following: (1) there was insufficient evidence to establish that Petitioner committed crimes against PALIC and Genworth; (2) there was no evidence or insufficient evidence that Petitioner was part of a corrupt organization; (3) the verdicts were against the weight of the evidence; (4) the Court improperly admitted evidence as it related to the crimes of persons other than Petitioner, namely crimes committed by co-Defendant Judi Grate; (5) the Attorney for the Commonwealth made improper remarks during his closing argument; (6) the Trial Court erred in Petitioner's Omnibus Pre-trial Motion; (7) it was an error for Judge Sibum to not recuse herself; and (8) the Trial Court failed to give jury instructions requested by defense counsel regarding the failure of the Commonwealth to call co-Defendant Judi Grate as a witness at Petitioner's trial.

On August 20, 2012, August 28, 2012 and August 30, 2012 Petitioner filed additional *pro se* PCRA motions.

On August 31, 2012, we denied Petitioner's June 26, 2012 PCRA Petition because she failed to file a response within thirty days of the Notice of Intent to Dismiss.

On September 6, 2012, Attorney Watkins filed a Motion to Withdraw as Counsel. On September 10, 2012, this Court filed two Orders: (1) a rule returnable for

6

answer and hearing regarding Attorney Watkins Motion to Withdraw as Counsel; and (2) pursuant to Pa. R.Crim.P. 576(a)(4), an Order directing the Clerk of Courts to send Attorney Watkins a copy of Petitioner's *pro se* PCRA motions.

On October 17, 2012, a hearing was held on Petitioner's Post-Sentence Motions and Attorney Watkins' Motion to Withdraw as Counsel. At the hearing, Petitioner indicated that she wanted Attorney Watkins to remain in the case and Attorney Watkins' motion to withdraw was itself withdrawn.

By Order dated January 7, 2013, we denied Petitioner's Post-Sentence Motions and Petitioner was advised that she had thirty days to file an appeal. On February 14, 2013, Attorney Watkins filed an Unopposed Petition for Allowance of Appeal *Nunc Pro Tunc* and for Restoration of Appellate Rights. That petition was granted on February 19, 2013.

Petitioner, through Attorney Watkins, filed a Notice of Appeal on February 22, 2013. During the pendency of the appeal, before briefs were filed, Attorney Watkins became an assistant Monroe County Public Defender. As a result, Hillary Madden, Esq., the third attorney Petitioner claims was ineffective, was appointed to represent Petitioner. Attorney Madden filed Petitioner's appeal brief.

On May 20, 2014, the Superior Court affirmed the judgment of sentence. Petitioner did not file a petition for allowance of appeal.

On September 26, 2014, Petitioner filed a *pro se* PCRA motion. We appointed Holly B. Conway, Esq. – Petitioner's sixth attorney – to represent Petitioner in this collateral proceeding. Attorney Conway ultimately filed an amended PCRA petition. Thereafter, a PCRA hearing was convened. Petitioner and attorneys Velander,

7

Watkins, and Madden testified and several exhibits were admitted into evidence. The parties were granted leave and then extensions of time to file briefs. After consideration of the PCRA petitions, the record and file in this case, the evidence, and the submitted briefs, we issued an order denying the amended PCRA petition.

## DISCUSSION

### A.    Allegations of Ineffectiveness and Assignments of Error

Using the shotgun approach to pleading, Petitioner alleged fifteen separate but somewhat overlapping and inter-related claims of ineffective assistance of counsel:

1.    Attorney Verlander was ineffective for failing to adequately advise Petitioner of potential ramifications of withdrawing a guilty plea versus a trial;

2.    Attorney Watkins was ineffective for failing to call necessary witnesses;

3.    Attorney Watkins was ineffective for failing to adequately prepare for trial;

4.    Attorney Watkins was ineffective for failing to adequately cross-examine witnesses;

5.    Attorney Watkins was ineffective for failing to adequately prepare client for trial;

6.    Attorney Watkins was ineffective for failing to adequately advise Petitioner of potential ramifications of going to trial versus a plea arrangement;

7.    Attorney Watkins was ineffective for failing to adequately advise Petitioner of potential ramifications of withdrawal of guilty plea;

8.    Attorney Watkins was ineffective for failing to review PSI with Petitioner prior to sentencing;

8

9.    Attorney Watkins was ineffective for failing to advise/explain to Petitioner regarding plea offers;

10.    Attorney Madden was ineffective for failing to appeal the sentence as it was not proper;

11.    Attorney Madden was ineffective for failing to appeal the issue of Recusal of Judge;

12.    Attorney Madden was ineffective for failing to adequately cite to documents and testimony;

13.    Attorney Madden was ineffective for failing to assure the certified record was complete;

14.    Attorney Madden was ineffective for failing to appeal the issue of severance;

15.    Attorney Madden was ineffective for failing to adequately communicate with Defendant or to ensure factual correctness of the Brief.

In her Rule 1925(b) statement, Petitioner reasserts all fifteen claims and alleges that we erred in failing to find ineffectiveness under each of them. For the reasons that follow, Petitioner waived several of her ineffectiveness claims, the remainder of the claims lack merit, and we properly denied the amended PCRA petition.

B.    The Standards

1.    Previous Litigation and Waiver

PCRA relief is not available for alleged errors that have been "previously litigated" or waived. 42 Pa.C.S.A. § 9543(a)(3); *Commonwealth v. Fowler*, 930 A.2d 586 (Pa. Super. 2007) Accordingly, "[t]o be entitled to PCRA relief, a petitioner must

9

plead and prove, *inter alia,* that the allegation of error has not been previously litigated or waived." *Commonwealth v. Berry,* 877 A.2d 479, 482 (Pa. Super. 2005) *(en banc), appeal denied,* 917 A.2d 844 (Pa. 2007). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2); *Commonwealth v. Keaton,* 45 A.3d 1050, 1060 (Pa. 2012). An issue is waived if it could have been raised prior to the filing of the PCRA petition, but was not. *Commonwealth v. Williams,* 900 A.2d 906 (Pa. Super. 2006) *(en banc); Commonwealth v. Berry, supra.* Specifically, "an issue is considered waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." *Fowler,* 930 A.2d at 594 (citing 42 Pa.C.S.A. § 9544(b) and *Commonwealth v. Williams,* 900 A.2d 906, 908–09 (Pa.Super.2006) *(en banc)).*

### 2.  Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel claims implicate *Strickland v. Washington,* 466 U.S. 668 (1984), as adopted in Pennsylvania by *Commonwealth v. Pierce,* 527 A.2d 973 (Pa. 1987), which requires a defendant alleging ineffectiveness to demonstrate that she was prejudiced by an act or omission of his attorney. In cases where the *Strickland/Pierce* test applies, the analysis begins with

> the presumption that counsel rendered effective assistance. *Commonwealth v. Basemore,* 560 Pa. 258, 277 n. 10, 744 A.2d 717, 728 n. 10 (2000). To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our Commonwealth, we have rearticulated the *Strickland* Court's performance and prejudice inquiry as a three-prong

10

test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

*Commonwealth v. Dennis,* 17 A.3d 297, 301 (Pa. 2011). *See Commonwealth v. Tedford,* 960 A.2d 1 (Pa. 2008); *Commonwealth v. Dennis,* 950 A.2d 945, 953 (Pa. 2008); *Commonwealth v. Gwynn,* 943 A.2d 940, 945 (Pa. 2008); *Commonwealth v. Mallory,* 941 A.2d 686 (Pa. 2008), *cert. denied,* 555 U.S. 884 (2008).

A corollary to the first element, counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. *Commonwealth v. Roney,* 79 A.3d 595, 604 (Pa. 2013); *Commonwealth v. Washington,* 927 A.2d 586, 603 (Pa. 2007); Commonwealth *v. Harvey,* 812 A.2d 1190, 1199 (Pa. 2002). With regard to the second, the

reasonable basis element, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. [*Commonwealth v.*] *Hanible,* [30 A.3d 426,] 439 [(Pa. 2011)] (citation omitted). We will conclude that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative offered a potential for success substantially greater than the course actually pursued. [*Commonwealth v.*] *Spotz,* [18 A.3d 244] 260 [Pa. 2011] (citation omitted). To establish the third, the prejudice element, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *Id.*

*Roney,* 79 A.3d at 604 (quotation marks omitted).

Since a petitioner must prove all three prongs of the *Strickland/Pierce* test, if he or she fails to prove any one of the prongs, the ineffectiveness claim may be

11

dismissed on that basis alone without the need to determine whether the other two prongs have been met. *Commonwealth v. Basemore*, 744 A.2d 717 (Pa. 2000). Similarly, because claims of ineffective assistance of counsel are not self-proving, a petitioner cannot prevail unless he or she properly develops the claim. Thus, when a petitioner fails to properly plead all three prongs, or, having done so, to develop the claim, the petitioner is not entitled to relief and the court may find the claim waived for lack of development. *See Commonwealth v. Steele*, 961 A.2d 786 (Pa. 2008).

Additionally, trial counsel has broad discretion to determine the course of defense tactics and strategy. *See Commonwealth v. Fowler*, 670 A.2d 153 (Pa. Super. 1996); *Commonwealth v. Mizell*, 425 A.2d 424 (Pa. 1981). Where matters of strategy and tactics

> are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different.

*Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010) (citations omitted). Further, "[t]he length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation." *Commonwealth v. Howard*, 732 A.2d 1213, 1215 (Pa. Super. 1999)(*citing Commonwealth v. Ellis*, 700 A.2d 948, 960 (Pa. Super. 1997)). Where a petitioner has not provided any evidence to support his allegation of inadequate preparation and it is shown that counsel met with the petitioner prior to

12

trial, trial counsel cannot be deemed to be ineffective for lack of preparation without sufficient proof. *Id.* Thus, a petitioner is not entitled to relief simply because he or she did not like the strategy or because the strategy was unsuccessful. *Commonwealth v. Davis*, 554 A.2d 104, 111 (Pa. Super. 1989).

Finally, claims involving ineffectiveness of appellate counsel have unique concerns:

> Arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief. *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). *Robbins*, 528 U.S. at 288, 120 S.Ct. 746 (characterizing *Barnes*). "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), *quoting Barnes*, 463 U.S. at 751-52, 103 S.Ct. 3308. *See also Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir.1999) ("One element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise.").

*Commonwealth v. Lambert*, 797 A.2d 232, 244 (Pa. 2001).

Applying these standards to the facts and circumstances of this case we found, for the reasons that follow, that Petitioner's allegations of ineffectiveness lacked merit.

C.   Plea-Based Claim of Ineffectiveness: Claims 1 (Attorney Velander), 6, 7, and 9 (Watkins)

In her first claim, Petitioner contends that Attorney Velander was ineffective for failing to adequately advise her of the potential ramifications of withdrawing her guilty plea versus going to trial. In claims six, seven, and nine, Petitioner asserts that Attorney Watkins was similarly ineffective in failing to adequately advise her of the

13

consequences of going to trial versus accepting a plea, failing to advise her of the ramifications of withdrawing her plea, and for failing to advise and explain plea offers to her. All of these claims lack merit.

In general, a defense attorney has a duty to inform his client of a plea offer and to meaningfully discuss the offer with the client. *Commonwealth v Napper*, 385 A.2d 521 (Pa. super. 1978). *See Commonwealth v. Chazin*, 873 A.2d 732 (Pa. Super. 2005), *appeal denied*, 887 A.2d 1239 (Pa. 2005); *Commonwealth v. Copeland*, 554 A.2d 54 (Pa. Super. 1988). More recently, in *Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) and *Lafler v. Cooper*, __ U.S. __, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), the United States Supreme Court held that, in general, defense counsel have a duty to timely and meaningfully communicate to their clients formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. The High Court further held that if an attorney fails to fulfill this duty, he may be found to be ineffective. In order to prove ineffectiveness, a defendant who rejects a plea offer must show that,

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385.

Here, Petitioner shotguns plea-based claims of ineffectiveness against two attorneys in the hopes that some pellets will hit the mark and stick. None do.

14

In direct contrast to Petitioner's version of events, Attorney Velander credibly testified that he meaningfully communicated the Commonwealth's initial plea offer to Petitioner, that he informed her of the ramifications and risks of going to trial versus the benefits of pleading guilty, that Petitioner initially willingly accepted the plea, and that he explained the ramifications of withdrawal of the initial plea. Specifically, Attorney Velander testified that both he and prior counsel had advised Petitioner that that the initial plea was in her best interest, that after Petitioner entered the plea he consulted with Petitioner on several occasions regarding her desire to withdraw the plea, that he strongly recommended against withdrawal, and that Petitioner's ultimate decision (and *pro se* motion) to withdraw the plea was a significant reason for his request for permission to withdraw from representation. (N.T., 2/23/2015, pp. 37-45).

Similarly, again in contrast to Petitioner's version of events, Attorney Watkins credibly testified that he meaningfully communicated plea offers and opportunities to Petitioner and that he, too, explained the risks and ramifications of going to trial versus accepting a plea. Specifically, after Attorney Watkins inherited the case, the Commonwealth's offer was that Petitioner would enter an open plea to three third-degree felonies. As part of the offer, Petitioner's daughter would plead to one count and receive a time-served sentence. Attorney Watkins spent substantial time explaining the advantages of the plea, as opposed to going to trial. (*Id.* at 10-11). He told Petitioner that she would be facing less time with a guilty plea to the third-degree felonies than if she was convicted of the first-degree felonies. (*Id.* at 25-26). He also discussed the sentencing guidelines with Petitioner noting the statutory limits and

15

comparing first and third degree felonies. (*Id.* at 27). Additionally, he discussed with Petitioner the strengths of the Commonwealth's case. (*Id.* at 22-23). He strongly advised Petitioner to accept the offer that took away the most serious felonies and drastically reduced the number of offenses. His advice, like the advice of the attorneys who represented Petitioner before him, was ignored.

In sum, both Attorney Velander and Attorney Watkins credibly testified that they meaningfully communicated and discussed plea offers with Petitioner. Attorney Velander successfully negotiated a plea that was favorable, especially when compared to the number of crimes of which the jury found Petitioner guilty. When Petitioner changed her mind, Attorney Velander tried to talk her out of withdrawing the plea. His advice was ignored. Later, when Attorney Watkins recommended that Petitioner accept a favorable plea, his advice was similarly ignored.

In contrast to the testimony of her attorneys, Petitioner's PCRA hearing testimony regarding her plea-based claims of ineffectiveness was patently incredible, self-serving, contrary to her prior testimony and statements to this Court, and, at times, irrelevant or internally inconsistent. In this regard, her claim that the pre-trial administrative separation of she and her daughter at the Monroe County Correctional Facility constituted an impropriety that somehow prevented her from pleading guilty, a claim also raised by her daughter, is at once specious and a red herring. The claim is debunked in the Melissa Bucano PCRA Opinion (Appendix 1). Further, after observing Petitioner testify, reviewing the record, and reading the submitted briefs, it is clear to the undersigned that Petitioner's plea-based PCRA claims are based on "buyer's remorse," and not on any act, omission, or ineffectiveness on the part of her attorneys.

16

Both the initial plea, which Petitioner accepted and then withdrew, and the plea that was on the table immediately before trial, would have resulted in conviction of fewer and less serious crimes and a shorter sentence than she received after going to trial and being convicted of twenty-two crimes, including more serious felony crimes. Petitioner was properly and fully informed of the pleas, the risks and benefits of withdrawing the initial plea, of rejecting the subsequent offer, and of going to trial, and the potential sentences she faced. To use a colloquialism, by ignoring the advice of her attorneys, Petitioner, like her daughter, "rolled the dice" and lost. Regret for her decision does not allege, much less prove, ineffectiveness.

D.   Additional Claims Against Attorney Watkins – Claims 2, 3, 4, 5, and 8.

Petitioner's next five claims allege ineffectiveness against Attorney Watkins. None of these claims holds water.

In claim two, Petitioner alleges that Attorney Watkins was ineffective for failing to call necessary witnesses at trial. Although not completely clear, it appears from her brief that Petitioner's third claim -- that Attorney Watkins was ineffective for failing to adequately prepare for trial -- is based on the assertion that Attorney Watkins failed to interview witnesses or call expert witnesses. Both claims lack merit.

Where the underlying claim of ineffectiveness is based on counsel's failure to present witnesses, the defendant must plead and prove that: (1) the witness existed, (2) the witness was available, (3) counsel was informed of the existence of the witness or should have known of their existence, (4) the witness was available and would have testified on the defendant's behalf, and (5) the absence of the testimony prejudiced the defendant. *Commonwealth v. Purcell*, 724 A.2d 293, 306 (Pa. 1999). "Trial counsel's

17

failure to call a particular witness does not constitute ineffective assistance of counsel without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense." *Commonwealth v. Khalil*, 806 A.2d 415, 422 (Pa. Super. 2002) (citing *Commonwealth v. Durst*, 559 A.2d 504 (Pa. 1989)). Thus, a defendant asserting ineffective assistance based on a failure to call a particular witness has the burden of showing trial counsel had no reasonable basis for failing to call a witness. *Commonwealth v. Small*, 980 A.2d 549, 560 (Pa. 2009). A strategic decision not to call a witness may furnish a reasonable basis for the failure to do so, provided that counsel has made an informed strategic choice. *See Commonwealth v. Lee*, 585 A.2d 1084, 1088-89 (Pa. Super. 1991). These same standards apply when evaluating claims of ineffectiveness based on counsel's failure to interview a witness or to call an expert witness. *See Commonwealth v. Priovolos*, 715 A.2d 420, 422 (Pa. 1998) (discussing standards of ineffectiveness for failing to interview a witness) and *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (discussing standards of ineffectiveness for failing to call an expert witness).

In this case, Petitioner did not at the PCRA hearing call any of the witnesses whom she contends Attorney Watkins should have interviewed or called at trial. Thus, under the cited cases and standards, she did not establish that the witnesses were available or that they would have testified on her behalf. Similarly, she did not factually demonstrate that the testimony of the witnesses would have been beneficial or helpful in establishing a defense. Additionally, since the substance of what the witnesses purportedly would have said is not factually of record, Petitioner did not and cannot establish prejudice. Accordingly Petitioner failed to meet her burden of proof.

18

Alternatively, if these claims will be reviewed based on Petitioner's statements and the arguments in her brief, the claims are bootless. In her PCRA petitions, during the PCRA hearing, and in her brief, Petitioner contends that Attorney Watkins was ineffective for failing to call Dr. Artamaonov, Dr. Vegari, Christopher Bucano, Attorney Tim Daly, Attorney Abrahamsen, Attorney Conaboy, Attorney Wes Niemonski, Judi Grate, Linda Lanzo, Jennifer Miller, PCCD Ortiz, and J. Carlos Colon.

As to these purported witnesses, Petitioner fails to substantively mention anything about Linda Lanzo, Jennifer Miller, and PCCD Ortiz in her brief. Thus, she has waived her claims as to theses witnesses and, in any event, has failed plead and prove any the requirements necessary to show that counsel was ineffective for failing to call them.

As to Doctors Artamaonov and Vegari, Petitioner wished to have these witnesses testify to injuries she received in a car accident prior to this criminal case. However, as Petitioner admits in her brief, the Court indicated multiple times that the issue of Petitioner's injuries was irrelevant and not to be an issue at trial. For this reason, Attorney Watkins had a reasonable basis for not calling those witnesses.[3]

As to the "failure" to call Petitioner's son, Christopher Bucano, there was no oversight or omission. Attorney Watkins made a conscious, strategic decision not to call him. As Attorney Watkins stated at hearing, "[i]n my opinion from a trial strategy standpoint, the less opportunity I gave the Commonwealth to demonstrate how the Bucano family was operating at that time, the better chance [Petitioner] had of

---

[3] This claim would appear to have been more appropriately brought in Petitioner's direct appeal as a challenge to Judge Sibum's ruling. Since the issue was not raised in the direct appeal, it has been waived. In any event, the testimony Petitioner now indicates she would have liked to present was, as Judge Sibum ruled, unquestionably irrelevant. Thus, there is and can be no merit to Petitioner's contention in any procedural or substantive context.

19

acquittal." (N.T., 2/23/2015, p. 14). In a case where the Petitioner was charged with Corrupt Organizations, and in which two of her family members, including her son, were charged with being part of the same corrupt organization, we believe that deciding not call a member of Petitioner's family -- and organization -- was reasonable trial strategy. *See Commonwealth v. Lee, supra.*

As to J. Carlos Colon, Petitioner failed to address in her brief that the witness existed and that the witness was available and would have testified on her behalf. Instead, she conclusorily asserts only that it was prejudice to not call him because he could explain "what [he] did for Ms. Bucano." As to Judi Grate, Petitioner claimed that the putative witness was available, but did not demonstrate that Ms. Grate would have testified on her behalf. Additionally, as to both witnesses, Petitioner did not establish that the absence of their testimony prejudiced her. Thus, as to both of these witnesses, Petitioner failed to satisfy the standards for ineffectiveness.

Regarding the attorneys, the absence of the testimony they would have given did not prejudice Petitioner. Petitioner argues that the identified attorneys could have produced evidence of monetary settlements she received to offset testimony that insinuated Petitioner was committing fraud because of the expenses she incurred with little income. However, Petitioner herself testified to the civil settlements that she received. (N.T., 4/24/2012, pp. 138-39). Thus, the information was presented to the jury and there was no prejudice in not calling the attorneys to give repetitive testimony.

As to expert witnesses and the suggestion that Attorney Watkins was ineffective for failing to call them, Petitioner simply failed to substantively develop the claim.

20

Finally, in addition to the above, Attorney Watkins testified that he did not call several witnesses based on informed strategy. (N.T., 2/23/2015, pp. 9-10, 14-15, and 24). His testimony was credible.

Simply, Petitioner failed to demonstrate that Attorney Watkins was ineffective for failing to interview or call witnesses.

In claim four, Petitioner asserts that Attorney Watkins was ineffective for failing to adequately cross-examine witnesses. However, Petitioner failed to mention any legal or factual basis for this claim and theory of relief. Where a petitioner, "fails to meaningfully discuss each of the three ineffectiveness prongs, 'he is not entitled to relief, and we are constrained to find such claims waived for lack of development.'" *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (citing *Commonwealth v. Steele*, 599 Pa. 341, 961 A.2d 786, 797 (2008)). Therefore, this claim is waived for lack of development.

In claim five, Petitioner argues that Attorney Watkins was ineffective for failing to adequately prepare her for trial. Specifically, she believes that Attorney Watkins did not speak to her in regards to trial strategy and did not prepare her to testify at trial. This claim is also devoid of merit.

Petitioner testified at the PCRA hearing that she never discussed either trial strategy or the issue of whether or not she should testify at trial with Attorney Watkins. Similarly, Petitioner testified that she did not know she was going to testify on her own behalf until the day the trial started when Attorney Watkins supposedly told her that he did not have a defense for her and, as a result, she would have to testify. Having observed petitioner testify and having reviewed the record, we did not (and do not) find

21

this self-serving testimony credible. Indeed, Petitioner's testimony is direct opposition to her statements to this Court during trial.

Attorney Watkins testified that Petitioner was "insistent upon testifying," despite this being against his advice. (N.T., 2/23/2015, p. 16). He also stated that he had spent, on two separate occasions, three to four hours preparing Petitioner to testify. (*Id.*) Besides this testimony, which we find credible, the record demonstrates that, during the trial, Petitioner was colloquied before she testified. During the colloquy, Petitioner stated that she had discussed testifying with her attorney and was doing so of her own volition. (N.T., 4/23/2012, pp. 156 - 57). A break was taken during the colloquy to allow additional time for Petitioner to discuss her decision with Attorney Watkins. (*Id.* at 158). She stated that she was not under duress and was not being forced or coerced to testify, but rather, was doing so of her own free will. (*Id.* at 159).

From this evidence, we believe that Attorney Watkins properly prepared Petitioner to testify at trial. Therefore, Petitioner's claim that Attorney Watkins was ineffective for failing to adequately prepare her for trial fails.

In claim eight, the final claim involving Attorney Watkins, Petitioner maintains that Attorney Watkins was ineffective in failing to review the Pre-Sentence Investigation ("PSI") with her. Once again this claim has no merit, and Petitioner has failed to show any prejudice from this action.

Where errors in a PSI are of little or no consequence at time of sentencing, the presentence report does not prejudice a defendant. As a result, there is no basis for a claim that trial counsel was ineffective for failure to discuss report with the defendant. *Commonwealth v. French*, 390 A.2d 1311, 1315 (Pa. Super. 1978).

22

Here, Petitioner fails to point to any specific inaccuracies within the PSI that prejudiced her. Instead, she claims that Attorney Watkins must have done only a "cursory" review of the PSI, and therefore, he must have missed some errors in the PSI. However, Attorney Watkins testified at the PCRA hearing that he received the PSI report a few days before sentencing and reviewed the document with Petitioner. (N.T., 2/23/2015, pp. 20). His testimony, which we find credible, derails Petitioner's speculative claim. In addition, while there appeared to be a slight error in the PSI at the sentencing hearing, the error was caught and addressed at the hearing. As a result, Petitioner suffered no prejudice. (*Id.* at 4 - 7). Claim eight fails.

E.     Claims Against Attorney Madden – Claims 10 through 15

Petitioner also raises claims of ineffectiveness against her appellate counsel, Attorney Madden. Like the claims lodged against Attorneys Velander and Watkins, these claims are meritless.

The first of these claims is that Attorney Madden was ineffective for failing to appeal the denial of the recusal motion. However, on this issue, Petitioner failed to specifically allege and argue, much less prove, the requisite prejudice. Therefore, she failed to sustain her burden of proving ineffectiveness pertaining to the recusal motion.

Additionally, and similarly, Petitioner neither alleged nor proved that Judge Sibum made any ruling or decision or took any action that was erroneous due to bias, prejudice, or unfairness. Instead, Petitioner points us to Judge Sibum's decisions involving personal injury suits and a support case. However, Judge Sibum fully and properly addressed those claims and issues in ruling on the motion at the time it was made.

23

In summary, Petitioner's personal injury suit was dismissed on motion of the defendant in the civil action for a judgment of *non pros* due to a prolonged period of inactivity. The case was dismissed based on the record and on evidence presented during a hearing at which neither Petitioner nor her civil attorney appeared despite notice. In the support action, Judge Sibum may have signed an order that was issued in the case, but did not decide any substantive issue. As to both prior cases, Judge Sibum unequivocally stated that her ability to be fair and impartial in the criminal proceeding had not been compromised or affected. (N.T., 4/16/2012, pp. 7-11). Judge Sibum's determination is supported by an objective assessment of the record and the rulings she made both before and after recusal was sought. This is especially true since the jury made the ultimate decision in the case.

Petitioner also complains that she and her co-defendant daughter were separated at the jail, a claim asserted by her daughter, in a different context, as discussed in the Melissa Bucano PCRA Opinion. Specifically, Petitioner claims that Judge Sibum purposefully split up her and her daughter while they were in jail, which action was later asserted as the basis for a *pro se* federal law suit that petitioner filed against Judge Sibum and others. However, the record in this case, as well as in co-defendant Melissa Bucano's PCRA proceeding, shows that Judge Sibum called the jail and asked that the two be separated at the request of her daughter's attorney, that the request of counsel was made for objectively valid reasons and purposes, and that, once that purposes had been served, Judge Sibum allowed a request for them to be reunited. (N.T., 4/16/12, pp. 5-7. *See* Melissa Bucano PCRA Opinion). As to the federal lawsuit, the case was dismissed on a motion for dismissal pursuant to F.R.C.P.

24

12(b)(6). A litigant cannot and should not be permitted to manufacture or manipulate a judicial recusal simply by filing a lawsuit against the presiding judge. In any event, Petitioner neither pled nor proved prejudice based on being separated from her daughter.

Simply, since Petitioner did not prove the requisite prejudice resulting from any ruling issued by Judge Sibum or the failure of counsel to appeal the denial of the recusal motion. Similarly, she did not establish that a challenge to the denial of recusal had arguable merit. Accordingly, this ineffectiveness claim lacks merit.

Next, Petitioner argues that Attorney Madden was ineffective for failing to appeal the sentence. This claim is likewise without merit.

Initially, in order to preserve a challenge to the discretionary aspects of a sentence on appeal, the challenge must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. *Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004). Here, Petitioner did not challenge her sentence either through post-sentence motions or during the sentencing hearing. As a result, she waived the issue.

In the alternative, even if the issue is deemed to have been properly preserved, the claim lacks arguable merit. According to Petitioner, Judge Sibum abused her discretion by failing to properly consider mitigating factors and by running her sentences consecutively. This claim fails to raise the required "substantial question" and, in any event, the record demonstrates that there was no abuse of discretion.

Sentencing is a matter within the sound discretion of the trial court. *See Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). In sentencing each particular

25

defendant, the sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed. The options include guilt without further penalty, probation, partial confinement, or total confinement. *Id.*; 42 Pa.C.S. § 9721(a). The court must impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). *See Walls*, 926 A.2d at 967-68; *Commonwealth v. Dodge*, 957 A.2d 1198, 1200 (Pa. Super. 2008) ("*Dodge II*"), *appeal denied*, 980 A.2d 605 (Pa. 2009).

The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing are instructive and advisory, but are not binding on the sentencing court. The court is obligated to consider the guidelines, but is under no duty to sentence a particular defendant within the guidelines or to impose the minimum possible confinement consistent with the guidelines. *Walls*, 926 A.2d at 575; *Dodge II*, 957 A.2d at 1201. Nonetheless, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citing *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1195 (Pa. 1996)).

In general, a sentencing judge must consider pertinent facts and sentencing factors and the force of the evidence and may not commit an error of law or inflict punishment that exceeds statutory prescriptions. *Commonwealth v. Youngkin*, 427 A.2d 1356, 1369 (Pa. Super. 1981). In more specific terms, "[w]hen imposing a sentence, a court is required to consider the particular circumstance of the offense and

26

the character of the defendant....In particular, the court should refer to defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Moury*, 992 A.2d at 171 (quoting *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. den*, 545 US 1148 (2005)).

The court determines whether the sentence imposed should run consecutively or concurrently with other sentences to which the defendant is subject. In this regard, it is well-settled that the sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. *See Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010) (and cases cited therein) and *Commonwealth v. Marts*, 889 A.2d 608 (Pa. Super. 2005) (same). *See also* 42 Pa. C.S.A. §9721(a).

The court [also] determines whether aggravating circumstances exist. If aggravating circumstances are present, "the court may impose an aggravated sentence ...." 204 Pa. Code. § 303.13(a). A sentencing judge "has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Stewart*, 867 A.2d 589, 593 (Pa. Super. 2005) (citation omitted). *See also Commonwealth v. Duffy*, 491 A.2d 230, 233 (Pa. Super. 1985) (holding that a sentencing judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated range). A sentencing judge may even consider uncharged criminal conduct for sentencing purposes.

> Not only does the case law authorize a sentencing court to consider unprosecuted criminal conduct, the sentencing

27

> guidelines essentially mandate such consideration when a prior record score inadequately reflects a defendant's criminal background.

*Commonwealth v. P.L.S.*, 894 A.2d 120, 131 (Pa. Super. 2006), *appeal denied*, 906 A.2d 542 (Pa. 2006). *See also* 204 Pa. Code §303.5(d).

The sentencing judge must state his or her reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The judge may satisfy this requirement by stating or demonstrating at time of sentencing that the judge has been informed of the reasons by the PSI report. *Commonwealth v. Coss*, 695 A.2d 831, 834 (Pa. Super. 1997); 42 Pa.C.S.A. § 9721(b). When, as here, a PSI report exists, the law presumes that

> the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself....[Sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true ... in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d at 18. *See also Moury*, 992 A.2d at 171; *Commonwealth v. Fowler*, 893 A.2d 758 (Pa. Super. 2006); *Commonwealth v. Tirado*, 870 A.2d 362 (Pa. Super. 2005); *Commonwealth v. Burns*, 765 A.2d 1144, 1150-1151 (Pa. Super. 2000). In this regard, a sentencing judge is not required, when giving the reasons for a particular sentence, to make a specific reference to the factors set forth in the Sentencing Code that were considered in deciding the sentence, but the record

28

as a whole must reflect that the judge in fact considered the sentencing factors. *Commonwealth v. Coulverson*, 34 A.3d 135, 145-146 (Pa. Super. 2011).

When imposing a sentence within the guidelines that departs from the standard range, the sentencing judge must state on the record his or her reasons for the sentence in the aggravated or mitigated range. 204 Pa. Code § 303.13. *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777 (Pa. Super. 2009); *Commonwealth v. Hoover*, 492 A.2d 443 (Pa. Super. 1985). Similarly, if the sentencing court imposes a sentence outside of the guidelines, it must provide a sufficient statement of its reasons for the deviation, and its failure to do so may constitute grounds for resentencing. *Walls*, 926 A.2d at 963. *See Commonwealth v.* Warren, 84 A.3d 1092 (Pa. Super. 2014); 42 Pa.C.S. § 9721; 204 Pa. Code § 303.1.

While a sentencing judge may satisfy the requirement to state reasons for the sentence given in a variety of ways, the reasons must be articulated at the time sentence is imposed and may not be supplied later in an appeal opinion issued in accordance with Pa. R.A.P. 1925(a). *See Commonwealth v. Giles*, 449 A.2d 641 (Pa. Super. 1982) (and cases cited therein). Accordingly, the intent of a judge's given sentence is determined at sentencing, rather than after an appeal from the judgment of sentence has been taken. (*Id.*).

In sum, our sentencing laws establish a framework for sentencing. Within the established framework, trial courts have broad discretion in determining the range of permissible confinements that best suits the particular defendant and the circumstances surrounding the event. *See Commonwealth v. Moore*, 617 A.2d 8, 12 (Pa. Super. 1992).

29

The statutory and judicial standards of review are reflective of the type of discretion vested in sentencing courts. Statutorily, the Sentencing Code prescribes a slightly different standard of appellate review for sentences that are outside the guidelines as opposed to sentences that fall within guideline ranges. Sentences that fall within guideline ranges are subject the "clearly unreasonable" standard of 42 Pa. C.S.A. Section 9781(c)(2), while sentences that fall outside the guidelines are subject to the "unreasonable" standard of Section 9781(c)(3). An "unreasonable" decision from the sentencing court would be one that is " 'irrational' or 'not guided by sound judgment.' " *Walls*, 926 A.2d at 963. *See also Dodge II*, 957 A.2d at 1200; 42 Pa. C.S.A. § 9781(c)(2) and (3).

Judicially, our Supreme Court has articulated the appellate standard of review as follows:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion....[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. In more expansive terms, our Court recently offered: an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

30

*Commonwealth v. Walls*, 926 A.2d at 961 (internal citations, quotation marks, and footnote omitted).

Challenges to the discretionary aspects of sentencing do not entitle a defendant to review as of right. In order to establish that review is warranted, the appellant must demonstrate that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. A substantial question exists only when the defendant advances a colorable argument that the sentencing judge's actions were either: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms of the sentencing process. *See Commonwealth v. Mouzon*, 812 A.2d 617, 627-628 (Pa. 2002) (plurality); *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010); *Moury, supra; Commonwealth v. Sierra*, 752 A.2d 910 (Pa. Super. 2000). These issues must be examined and determined on a case-by-case basis. *Commonwealth v. Marts*, 889 A.2d 608, 613 (Pa. Super. 2005).

Before reviewing the discretionary aspects of a sentencing claim, the Superior Court conducts:

> a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).... Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.

31

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 909 A.2d 303 (Pa. 2006) (citations and quotation marks omitted). *See also Commonwealth v. Oree*, 911 A.2d 169 (Pa. Super. 2006) (explaining challenges to discretionary aspects of sentencing must be raised in post-sentence motion or during sentencing proceedings; absent such efforts, claim is waived; inclusion of discretionary aspects of sentencing claim in Pa.R.A.P. 1925(b) statement will not cure waiver), *appeal denied*, 918 A.2d 744 (Pa. 2007).

"An allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate. Such a challenge goes to the weight accorded the evidence and will not be considered absent extraordinary circumstances." *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). Also, it is now well-settled that the imposition of consecutive, rather than concurrent, sentences generally does not raise a substantial question. Such a claim may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh and *prima facie* appears excessive considering the criminal conduct that occurred in the case, the nature of the crimes, and the length of imprisonment. *See Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013) ("*Dodge III*") (and cases cited therein), *appeal denied*, 91 A.3d 161 (Pa. 2014); *Commonwealth v. Mastromarino, supra* (same); *Commonwealth v. Moury, supra (same)*. As the Superior Court stated in *Dodge III*:

> To make it clear, a defendant *may* raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness

32

due to the consecutive nature of a sentence will not raise a substantial question.

*Dodge III,* 77 A.3d at 1270 (emphasis in original; citations and footnote omitted).

In this case, Petitioner's bald claims that Judge Sibum failed to properly consider mitigating factors does not raise the requisite substantial question. In any event, since there was a PSI that was reviewed by the sentencing judge, and because reasons for imposition of the sentence were stated on the record, Petitioner's claims substantively lack even arguable merit.

Similarly, the separate but related contention that imposition of consecutive sentences was improper fails to state the requisite substantial question and, in the alternative, is substantively without merit. This case simply does not present "extreme circumstances" and, objectively, the aggregate sentence is not unduly harsh considering the criminal conduct that occurred in the case, the nature of the crimes, and the length of imprisonment. *See Dodge* III, *supra.* On the contrary, considering that Petitioner's criminal enterprise was a sophisticated operation that spanned ten years, that Petitioner involved her children, that large sums of money were stolen, and that Petitioner failed to show remorse, the sentence was neither extreme nor harsh. Additionally, Judge Sibum adequately stated her reasons for imposing the sentence on the record.

Finally, Petitioner's comparison of her sentence to that of co-defendant Judi Grate is made of whole cloth. As Judge Sibum noted at time of sentencing, Grate pled guilty to substantially fewer and less serious charges than the offenses of which Petitioner was convicted by the jury. (**N.T.**, 4/7/2012, p. 3).Specifically, Grate pled

33

guilty to third-degree felonies, with the Corrupt Organizations charges being withdrawn.

In sum, Petitioner's sentencing challenge and the claim that counsel was ineffective for failing to appeal the sentence are baseless.

Petitioner next claims that Attorney Madden was ineffective for failing to appeal the denial of Petitioner's request to sever this case from Grate's case. This claim lacks merit for three reasons. First, Petitioner and Grate were not tried together. As noted, Grate pled guilty before trial. Accordingly, there was no basis on which to appeal the denial of the severance motion. Second, as also noted, a petitioner is not eligible for PCRA relief if the issue was previously litigated or waived. Previously litigated means the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa. C.S.A. §§ 9542, 9544(a). The issue of evidence involving Grate being used at trial was raised on direct appeal and addressed by the Superior Court, which found that the evidence was properly admitted at trial, and Petitioner did not thereafter file a petition for allowance of appeal. Finally, as with other ineffectiveness claims, Petitioner failed to demonstrate the requisite prejudice. For these reasons, the severance-based ineffectiveness claim fails.

Petitioner further alleges that Attorney Madden was ineffective in writing a brief that "was lacking" and in failing to produce a complete appeal record. According to Petitioner, the Superior Court's memorandum opinion in her direct appeal indicated that the certified record was not complete and noted a lack of citation to the record. However, Petitioner failed to establish what prejudice this caused her. This is most likely because the Superior Court substantively ruled on the issue (evidence

34

concerning Grate) for which it pointed out the lack of citation to specific portions in the record. In addition, Petitioner failed to produce any missing parts of the record or even to establish that the allegedly missing evidence exists. Without a showing of prejudice, and given that the Superior Court was able to rule on the substantive issues raised, this ineffectiveness claim cannot stand.

Petitioner's final claim is that Attorney Madden failed to adequately communicate with her because Attorney Madden failed to send her a copy of the appellate brief filed in her direct appeal before the brief was mailed to the Superior Court. Defendant offers no legal authority for the proposition that an attorney may be required to provide a client with a draft of an appellate brief. Moreover, the sole assertion of prejudice for this claim is that Petitioner does not think that she committed forgery despite the jury finding otherwise. As to this contention, it is hard to imagine how Petitioner's assertion of innocence and disagreement with the verdict would have prompted the Superior Court to order a new trial or to find that there was insufficient evidence of forgery. This is especially true since Petitioner did not advance the legal argument she would have made, or that she would have had appellate counsel make, had she been provided with a copy of the brief. Additionally, even if some obligation to provide an advance, draft copy of an appellate brief exists, Attorney Madden had a reasonable basis for mailing her brief before giving Petitioner a copy. As noted, Attorney Madden was appointed to replace Attorney Watkins after the direct appeal had been filed. With the time constraints and filing deadlines Attorney Madden faced, she did not finish the brief until two days before it was due. Accordingly, there was no time for Petitioner, who was at the time incarcerated, to review the brief before it was

35

sent to the Superior Court. (N.T., 2/23/15, p. 67). Once again, Petitioner failed to demonstrate prejudice or establish that, but for the purported error, the result of the appeal would have been different.

For these reasons, as well as those cited in the separate but related opinions referenced above, we denied Petitioner's request for relief under the PCRA. Her ineffectiveness claims were either waived or lacking in arguable merit. In addition, Petitioner failed to establish prejudice. Her assignments of error, which mirror her ineffectiveness claims, are meritless for the same reasons.

BY THE COURT:

DATE: 10/2/15

JONATHAN MARK, J.

Cc:   Superior Court of Pennsylvania
      Jonathan Mark, J.
      Kelly M. Sekula, Esq., Sr. DAG
      Holly B. Conway, Esq.

MONROE COUNTY, PA   2015 OCT 2 PM 3 04   CLERK OF COURTS

36